UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

M.V.B. COLLISION INC. d/b/a MID ISLAND
COLLISION,

Plaintiff,

    -against-

ALLSTATE INSURANCE COMPANY,

Defendant.

------------------------------------------------------------------X

Docket No.: 1:21-cv-1048

      Plaintiff, M.V.B. COLLISION INC. d/b/a MID ISLAND COLLISION, complaining of the defendant, ALLSTATE INSURANCE COMPANY, by its attorneys STEVEN F. GOLDSTEIN, LLP, respectfully alleges upon information and belief, as follows:

***PRELIMINARY STATEMENT***

1.    That the plaintiff MVB d/b/a Mid-Island Collision (hereinafter referred to as "MVB") is an Auto Body Repair Shop located in Nassau County, New York and has been doing business in the capacity of a New York State registered automotive & body repair shop. The business was established over 30 years ago. It maintains a state-of-the-art facility and is a certified by Mercedes, BMW, Jaguar, and other major motor vehicle manufacturers.

2.    That the plaintiff MVB, performs auto body repairs to motor vehicles, returning them to their pre-loss condition. Such repairs include, among other operations, diagnosis of collision avoidance systems, which must be pre-scanned within 2 hours of accident for safety and liability reasons.

3.    MVB is one of the leading automobile repair facilities in the nation. Their employees are trained by most major manufacturers and their facility uses tools required by those manufacturers. MVB follows manufacturer specifications and requirements in the performance of their repair. Without doing the foregoing a motor vehicle cannot be returned to its safe and

reliable pre-accident condition.

4.      That the defendant, (hereinafter referred to as "ALLSTATE"), is a New York State licensed insurance company that underwrites automobile insurance policies within the State of New York.

5.      As part of its insurance contract, ALLSTATE is obligated to pay claims by its insured (known as 1st party claims) and claims presented by vehicle owners whose vehicles have been damaged by an insured (known as 3rd party claims).

6.      That insurance contract and New York Law and Regulations also require that all damaged vehicles be repaired to their pre-accident condition.

7.      That at all times hereinafter mentioned, Plaintiff, MVB is, and continues to be, a New York State business corporation with a principle place of business at 20 Lakeview Ave. Rockville Center, New York, 11570.

8.      That at all times hereinafter mentioned, Plaintiff, MVB is, and continues to be, a business entity that conducts auto body repair at 20 Lakeview Ave. Rockville Center, New York, 11570.

9.      That at all times hereinafter mentioned, Defendant, ALLSTATE, was a domestic corporation authorized and existing under and by virtue of the laws of the State of New York;

10.     That at all times hereinafter mentioned, Defendant, ALLSTATE, was a foreign corporation duly authorized to do business in the State of New York.

11.     That at all times hereinafter mentioned, Defendant, ALLSTATE, was an incorporated business entity doing business under and pursuant to the Laws of the State of New York.

12.     That at all times hereinafter mentioned, Defendant, ALLSTATE, was a mutual company doing business under and pursuant to the Laws of the State of New York.

13.     That at all times hereinafter mentioned, Defendant, ALLSTATE, transacted business

within the State of New York and/or contracts to supply goods and services to the State of New York.

14.     That at all times hereinafter mentioned, Defendant, ALLSTATE, does and continues to conduct, do and/or solicit business within the State of New York.

15.     That at all times herein mentioned, the defendant, ALLSTATE, maintained, and continues to maintain an office in New York State.

## *PHOTO-ESTIMATING*

16.     That Defendant, ALLSTATE, has engaged in the practice of "photo-estimating", which purports to estimate the cost of repairing damage to motor vehicles solely by viewing photographs submitted to them by their insureds or third-party claimants. The insured or claimant is then issued a payment without having the opportunity to have the damage appraised by a professional automobile body repair facility, such as the plaintiff. Upon information and belief, the photo-estimating procedure was instituted with the express knowledge that a significant number of insureds or claimants will accept the payment without ever having the vehicle inspected by a professional repair facility, such as the plaintiff, thereby saving the defendant millions of dollars.

17.     For the past several years, including but not limited to 2017, Defendant ALLSTATE has engaged in a massive scheme whereby it encourages consumers, including first and third-party claimants, through television advertisements and other methods, insureds and claimants to agree to the photo-estimating scheme at such time that they call to report their claims. The insureds and third-party claimants who avail themselves of the photo-estimating process, agree to have the damage to their motor vehicles appraised by means of photographs taken and submitted by them to Defendant of only the damage which is visible to the naked eye. This program is offered to insureds and third-party claimants and they are encouraged to

participate, while Defendant, Allstate is fully aware of the fact that such method of appraising the damage is ineffective, illegal and does not comport with industry standards. This deception perpetrated upon insureds and third-party claimants begins with the appraisal based upon photographs which cannot and do no account for safety and liability considerations.

18.     Prior to entering into its scheme, the defendant was aware that it's insureds/third-party claimants unwittingly relied on their misrepresentations that photo-estimating was a competent, professional, and recognized method of estimating the actual cost of repairs to motor vehicles which sustained damages when such was not the case.

19.     Defendant was aware and remains aware that after impact, vehicles are unsafe to drive any distance and that they often do not operate as designed after impact. Automobile manufacturers acknowledge this and recommend that all vehicles, post impact, be transported to a professional automobile facility and broken down for a complete analysis of damage, which cannot be seen with photographs or visual observations.

20.     Reliance upon photo estimates, which never show full damage, allows ALLSTATE to deposit monies into reserve accounts that do not reflect the true value of damages to the vehicles, thereby avoiding fees and other financial obligations.

21.     The defendant's plan and scheme deprived their insureds and third-party claimants of the opportunity to have their vehicles properly repaired but it also put them in harm's way by creating the false sense that their vehicles were safe to drive when they in fact were not.

22.     The defendant's plan and scheme are intentionally designed to manipulate and understate its losses reflected in its combined expense and loss ratios.

23.     The defendant's plan and scheme are intentionally designed to manipulate and understate its losses reflected in its combined operating ratio.

24.     The defendant's plan and scheme are intentionally designed to manipulate and reduce

the of money held in reserve for each claim to falsely enhance its financial position.

25.     The defendant's plan and scheme are intentionally designed to manipulate and reduce the of money held in its unpaid loss reserves to falsely enhance its financial position

26.     Photo-estimating is ineffective, improper, unprofessional and unsafe for such reasons as unibody estimates cannot be done from a photograph because a car must be brought in to be reviewed, set up and measured to determine any unibody damage.

27.     The defendant instituted the foregoing procedure with the knowledge that a substantial number of insureds and third-party claimants will be deceived into accepting the defendant's payments and never have their vehicles repaired, thereby saving the defendant millions of dollars and depriving the plaintiff of the opportunity to repair certain vehicles.

28.     Neither the N.Y.S. Insurance Law and/or the regulations promulgated thereunder authorize or otherwise approve the use of estimating physical or mechanical damages to an automobile in the manner used by the defendant as described herein.

29.     It is well known that motor vehicles sustain damages which are not visible on a photograph (ie: damage to computer or sensors). Therefore, the good and accepted practice when appraising physical or mechanical damage to a motor vehicle if for the appraiser to personally view all the damage including that damage which may be hidden. It is not enough.

30.     However, defendant's scheme sacrifices the safety of the vehicle drivers and the general public by failing to advise the owners/ drivers that it is unsafe to operate the vehicle ( ie: manufacturers require that damage vehicles be towed to a repair facility following an accident).

31.     Appraisers who use the photo-estimating system are abrogating their duty and the good and accepted industry practices to properly and completely appraise the cost of repair on behalf of the defendant's insureds' and/or claimants.

32.     Lessee's of vehicles who are not repaired in accordance with manufacture standards and

procedures are subject to economic damages pursuant to the lease agreement. Likewise, owners of those vehicles remain subject to economic damages in the form of reduced resale value.

33.     The following are examples of vehicles, which were improperly appraised through Defendant's photo-estimating scheme:

(a)  MURIEL AGOSTINI, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for damage to her 2016 Toyota Scion motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about April 17, 2017, MURIEL AGOSTINI's 2016 Toyota Scion motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, MURIEL AGOSTINI's 2016 Toyota Scion motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2016 Toyota Scion motor vehicle owned by MURIEL AGOSTINI, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,730.65.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Toyota Scion motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $5,422.64.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Toyota Scion motor vehicle in person and wrote a Final Estimate in the amount of $11,667.31.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to MURIEL AGOSTINI by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $19,368.46.

(b)  JACOB ALLON, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2017 Nissan Sentra motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about August 27, 2018, JACOB ALLON's 2017 Nissan Sentra motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, JACOB ALLON's 2017 Nissan Sentra motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 Nissan Sentra motor vehicle owned by JACOB ALLON, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $905.67.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Nissan Sentra motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $7,517.50.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Nissan Sentra motor vehicle in person and wrote a Final Estimate in the amount of $16,133.53.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to JACOB ALLON by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $18,931.14.

(c) CRISTIBELL ALPHONSO, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2012 Mercedes-Benz GL450 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about December 7, 2017, CRISTIBELL ALPHONSO's 2012 Mercedes-Benz GL450 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, CRISTIBELL ALPHONSO's 2012 Mercedes-Benz GL450 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2012 Mercedes-Benz GL450 motor vehicle owned by CRISTIBELL ALPHONSO's, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $509.07.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2012 Mercedes-Benz GL450 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,737.67.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2012 Mercedes-Benz GL450 motor vehicle in person and wrote a Final Estimate in the amount of $14,856.10.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to CRISTIBELL ALPHONSO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $27,675.83.

(d) ANICIA APPLETON, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2018 Audi Q3 motor vehicle,

including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about June 22, 2019, ANICIA APPLETON's 2018 Audi Q3 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, ANICIA APPLETON's 2018 Audi Q3 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2018 Audi Q3 motor vehicle owned by ANICIA APPLETON, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,662.52.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2018 Audi Q3 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $18,411.49.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2018 Audi Q3motor vehicle in person and wrote a Final Estimate in the amount of $18,411.49.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to ANICIA APPLETON by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $22,533.80.

(e) DAVID ARMARANDO, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2016 BMW X6 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about February 19, 2018, DAVID ARMARANDO's 2016 BMW X6 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, DAVID ARMARANDO's 2016 BMW X6 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2016 BMW X6 motor vehicle owned by DAVID, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $4,359.87.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 BMW X6 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $3,182.83.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 BMW X6 motor vehicle in person and wrote a Final Estimate in the amount of $19,972.42.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to DAVID ARMARANDO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $39,157.00.

(f) VALENTINA FORGIONE, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2015 Mercedes-Benz CLA250 motor vehicle, including collision coverage, comprehensive coverage and coverage for all costs incidental thereto.

On or about September 15, 2017, VALENTINA FORGIONE's 2015 Mercedes-Benz CLA250 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, VALENTINA FORGIONE's 2015 Mercedes-Benz CLA250 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2015 Mercedes-Benz CLA250 motor vehicle owned by VALENTINA FORGIONE, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $414.30.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2015 Mercedes-Benz CLA250 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $9,278.35.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2015 Mercedes-Benz CLA250 motor vehicle in person and wrote a Final Estimate in the amount of $14,171.28.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to VALENTINA FORGIONE by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $39,138.67.

(g) DEBORAH FERDINAND, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2019 Mercedes-Benz E300 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about March 21, 2019, DEBORAH FERDINAND's 2019 Mercedes-Benz E300 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, DEBORAH FERDINAND's 2019 Mercedes-Benz E300 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2019 Mercedes-Benz E300 motor vehicle owned by DEBORAH FERDINAND, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $3,483.63.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Mercedes-Benz E300 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $9,373.05.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Mercedes-Benz E300 motor vehicle in person and wrote a Final Estimate in the amount of $22,917.31.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to DEBORAH FERDINAND by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $43,989.84.

(h) FERNANDO BENTO, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2007 GMC Denali motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about November 20, 2018, FERNANDO BENTO's 2007 GMC Denali motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, FERNANDO BENTO's 2007 GMC Denali motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2007 GMC Denali motor vehicle owned by FERNANDO BENTO, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,231.09.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2007 GMC Denali motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $7,079.06.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2007 GMC Denali motor vehicle in person and wrote a Final Estimate in the amount of $10,080.74.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to FERNANDO BENTO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $20,298.02.

(i)  CLARA BROOKS, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2019 Honda Pilot motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about April, 4, 2019, CLARA BROOKS's 2019 Honda Pilot motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, CLARA BROOKS's 2019 Honda Pilot motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2019 Honda Pilot motor vehicle owned by CLARA BROOKS, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,620.56.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Honda Pilot motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $12,397.33.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Honda Pilot motor vehicle in person and wrote a Final Estimate in the amount of $22,310.28.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to CLARA BROOKS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $46,546.27.

(j)  SANDRA BROWNWORTH, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2011 Audi Q5 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about November 15, 2018, SANDRA BROWNWORTH's 2011 Audi Q5 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, SANDRA BROWNWORTH's 2011 Audi Q5 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2011 Audi Q5 motor vehicle owned by SANDRA BROWNWORTH, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,408.54.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Audi Q5 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $7,409.82.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Audi Q5 motor vehicle in person and wrote a Final Estimate in the amount of $10,534.27.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to SANDRA BROWNWORTH by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $16,978.58.

(k) BERNITA CARSON, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2017 Mercedes-Benz C300 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about January 26, 2019, BERNITA CARSON's 2017 Mercedes-Benz C300 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, BERNITA CARSON's 2017 Mercedes-Benz C300 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 Mercedes-Benz C300 motor vehicle owned by BERNITA CARSON, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,060.86.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Mercedes-Benz C300 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $10,032.97.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Mercedes-Benz C300 motor vehicle in person and wrote a Final Estimate in the amount of $14,666.34.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to BERNITA CARSON by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $25,229.96.

(l) SALVADOR CASTELLON, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2012 Mercedes-Benz C300 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about June 11, 2017, SALVADOR CASTELLON's 2012 Mercedes-Benz C300 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, SALVADOR CASTELLON's 2012 Mercedes-Benz C300 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2012 Mercedes-Benz C300 motor vehicle owned by SALVADOR CASTELLON, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $530.58.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2012 Mercedes-Benz C300 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $4,356.56. Thereafter, an ALLSTATE adjuster inspected the aforementioned 2012 Mercedes-Benz C300 motor vehicle in person and wrote a Final Estimate in the amount of $7,304.14.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to SALVADOR CASTELLON by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $15,006.02.

(m)  PETER KANAKIS, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2019 RAM 1500 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or before May 3, 2020, PETER KANAKIS's 2019 RAM 1500 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, PETER KANAKIS's 2019 RAM 1500 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2019 RAM 1500 motor vehicle owned by PETER KANAKIS via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,639.22

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 RAM 1500 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,765.50.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 RAM 1500 motor vehicle in person and wrote a Final Estimate in the amount of $15,698.89.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to PETER KANAKIS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $39,578.87.

(n) HARRY CHIU, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2017 BMW X3 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about September 29, 2019, HARRY CHIU's 2017 BMW X3 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, HARRY CHIU's 2017 BMW X3 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 BMW X3 motor vehicle owned by HARRY CHIU, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,296.63.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 BMW X3 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $14,485.20.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 BMW X3 motor vehicle in person and wrote a Final Estimate in the amount of $15,781.83.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to HARRY CHIU by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $34,381.70.

(o) DANA CISNEROS, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2011 Honda Pilot motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about October 11, 2017, DANA CISNEROS's 2011 Honda Pilot motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, DANA CISNEROS's 2011 Honda Pilot motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2011 Honda Pilot motor vehicle owned by DANA CISNEROS, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $412.78.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Honda Pilot motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $5,241.03.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Honda Pilot motor vehicle in person and wrote a Final Estimate in the amount of $10,172.20.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to DANA CISNEROS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $20,428.07.

(p) ONER COLE, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2016 Mercedes-Benz C300 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about November 1, 2018, ONER COLE's 2016 Mercedes-Benz C300 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, ONER COLE's 2016 Mercedes-Benz C300 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2016 Mercedes-Benz C300 motor vehicle owned by ONER COLE, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,498.89.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Mercedes-Benz C300 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $8,029.11.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Mercedes-Benz C300 motor vehicle in person and wrote a Final Estimate in the amount of $19,008.19.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to ONER COLE by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $41,155.64.

(q) KRISTEN SPOEREL, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2016 Honda Odyssey motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about April 15, 2019, KRISTEN SPOEREL's 2016 Honda Odyssey motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, KRISTEN SPOEREL's 2016 Honda Odyssey motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2016 Honda Odyssey motor vehicle owned by

KRISTEN SPOEREL, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,067.78.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Honda Odyssey motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $9,642.20.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Honda Odyssey motor vehicle in person and wrote a Final Estimate in the amount of $15,803.79.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to KRISTEN SPOEREL by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $31,897.45.

(r) ANIMESH VYAS, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2017 Audi Q7 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about October 23, 2017, ANIMESH VYAS's 2017 Audi Q7 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, ANIMESH VYAS's 2017 Audi Q7 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 Audi Q7 motor vehicle owned by ANIMESH VYAS, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,175.76.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Audi Q7 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $7,867.99.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 Audi Q7 motor vehicle in person and wrote a Final Estimate in the amount of $20,442.37.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to ANIMESH VYAS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $52,778.93.

(s) BEATRICE DEEVY, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2019 Jeep Cherokee motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about October 27 2018, BEATRICE DEEVY's 2019 Jeep Cherokee motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, BEATRICE DEEVY's 2019 Jeep Cherokee motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2019 Jeep Cherokee motor vehicle owned by BEATRICE DEEVY, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,196.88.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Jeep Cherokee motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $11,528.23.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2019 Jeep Cherokee motor vehicle in person and wrote a Final Estimate in the amount of $14,115.23.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to BEATRICE DEEVY by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $30,044.31.

(t)  WILLIE McGHEE, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2017 GMC Sierra motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about December 10, 2017, WILLIE McGHEE's 2017 GMC Sierra motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, WILLIE McGHEE's 2017 GMC Sierra motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 GMC Sierra motor vehicle owned by WILLIE McGHEE, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $1,325.47.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 GMC Sierra motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $2,260.09.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 GMC Sierra motor vehicle in person and wrote a Final Estimate in the amount of $12,810.87.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to WILLIE McGHEE by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $32,012.41.

(u) STEPHEN PLATTNER, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2013 Audi S4 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about July 11, 2017, STEPHEN PLATTNER's 2013 Audi S4 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, STEPHEN PLATTNER's 2013 Audi S4 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2013 Audi S4 motor vehicle owned by STEPHEN PLATTNER, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $463.39.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2013 Audi S4 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,765.60.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2013 Audi S4 motor vehicle in person and wrote a Final Estimate in the amount of $17,464.46.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to STEPHEN PLATTNER by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $34,669.96.

(v) SUSAN GRECO, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2016 Honda Civic motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about March 24, 2018, SUSAN GRECO's 2016 Honda Civic motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, SUSAN GRECO's 2016 Honda Civic motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2016 Honda Civic motor vehicle owned by SUSAN

GRECO, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $940.14.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Honda Civic motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $4,844.95.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2016 Honda Civic motor vehicle in person and wrote a Final Estimate in the amount of $8,014.19.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to SUSAN GRECO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $18,698.61.

(w) ELIZABETH MEJIA, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for her 2017 BMW X1 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about June 10, 2018, ELIZABETH MEJIA's 2017 BMW X1 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, ELIZABETH MEJIA's 2017 BMW X1 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2017 BMW X1 motor vehicle owned by ELIZABETH MEJIA, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $857.35.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 BMW X1 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,881.59.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2017 BMW X1 motor vehicle in person and wrote a Final Estimate in the amount of $13,373.29.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to ELIZABETH MEJIA by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $31,469.84.

(x) JOSEPH PRISCO, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2014 Mercedes-Benz ML350 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about June 5, 2018, JOSEPH PRISCO's 2014 Mercedes-Benz ML350 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, JOSEPH PRISCO's 2014 Mercedes-Benz ML350 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2014 Mercedes-Benz ML350 motor vehicle owned by JOSEPH PRISCO, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $548.12.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2014 Mercedes-Benz ML350 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $5,875.76.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2014 Mercedes-Benz ML350 motor vehicle in person and wrote a Final Estimate in the amount of $8,605.44.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to JOSEPH PRISCO by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $20,178.74.

(y) SCOTT ROSNER, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2011 Ford Edge motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about July 26, 2019, SCOTT ROSNER's 2011 Ford Edge motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, SCOTT ROSNER's 2011 Ford Edge motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2011 Ford Edge motor vehicle owned by SCOTT ROSNER, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $411.25.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Ford Edge motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $3,466.80.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2011 Ford Edge motor vehicle in person and wrote a Final Estimate in the amount of $6,908.12.

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to SCOTT ROSNER by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $12,660.50.

(z) KEVIN THOMAS, was afforded an automobile insurance policy by Defendant, ALLSTATE, which provided insurance coverage for his 2015 Mercedes-Benz C300 motor vehicle, including collision coverage, comprehensive coverage, and coverage for all costs incidental thereto.

On or about September 2, 2017, KEVIN THOMAS's 2015 Mercedes-Benz C300 motor vehicle was involved in a motor vehicle accident, which required that extensive repairs be made to said vehicle.

That prior to the accident, KEVIN THOMAS's 2015 Mercedes-Benz C300 motor vehicle was undamaged.

Defendant, ALLSTATE, inspected the 2015 Mercedes-Benz C300 motor vehicle owned by KEVIN THOMAS, via the QuickFoto estimating on the ALLSTATE app, and wrote an Estimate in the amount of $499.30.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2015 Mercedes-Benz C300 motor vehicle in person and wrote a Supplemental Estimate 1 in the amount of $6,129.94.

Thereafter, an ALLSTATE adjuster inspected the aforementioned 2015 Mercedes-Benz C300 motor vehicle in person and wrote a Final Estimate in the amount of $8,417.84

The aforementioned motor vehicle was fully repaired by Plaintiff, M.V.B. COLLISION INC., and was returned to its pre-loss condition, as required by the laws of the State of New York and the insurance policy issued to KEVIN THOMAS by the defendant.

That the fair and reasonable cost of repair of the subject motor vehicle was determined by Plaintiff, M.V.B. COLLISION INC., to be $16,835.58.

34.    Every aspect of defendant's scheme is motivated by profit and greed without regard for their insured(s), claimants, the businesses that serve their insureds, and the consumer- public at large.

35.    The scheme is perpetrated, aided and abetted by employees of ALLSTATE Insurance Company and independent contractors who receive financial incentives from Defendant to damage to motor vehicles, on its behalf, solely on photographs all the while knowing that such method cannot discover damage that is not visible on a two-dimensional photograph.

### *FIRST CAUSE OF ACTION*

36.     That over the years, including 2017, the defendant, through its agent, employees and servants, made misrepresentations or omissions which were likely to mislead and deceive a reasonable consumer in the Plaintiff's circumstances.

37.     The defendant, its agents, servant and employees, independent contractors including but not limited to its appraisers, supervisors and adjusters, operated a scheme to defraud its insured's and claimants whereby it advertised that it could fairly and accurately appraise the damage to their motor vehicles solely by viewing photographs of visible damage.

38.     The defendant, its agents, servant and employees, independent including but not limited to its appraisers, supervisors and adjusters, knew or should have known that in most, if not all instances motor vehicles involved in an accident sustain damage which was hidden from plain sight.

39.     The defendant, its agents, servant and employees, including but not limited to its appraisers, supervisors and adjusters, did, and continues to issue appraisals, which undervalue the amount of money necessary to repair damage to vehicles.

40.     The defendant, its agents, servant and employees, including but not limited to its appraisers, supervisors and adjusters, created its scheme with the knowledge that a percentage of their insureds and claimants will accept payment from the and never repair their vehicles.

41.     It is common place for an insurer, such as the defendant, to perform more than one inspection of a vehicle, known as a supplement(s) to address damage, which cannot be viewed on a photographic inspection and to arrive at a fair and reasonable estimate of the costs to repair the vehicle and return it to its pre-accident condition.

42.     The plaintiff, and consumers-at-large, have been injured as the result of the defendant's scheme.

43.     The defendants, its agents, servant and employees, including but not limited to its

appraisers, supervisors and adjusters, created its scheme knowing that it will save a significant amount of money paid on claims by virtue of the fact that a significant percentage of claimants will never repair their vehicles and that therefore no supplement(s) will be required.

44.     The defendants utilized person(s) who were not qualified to issue damage repair appraisals for damage to vehicles.

45.     The defendants, with intent to deceive, did not properly and professionally evaluate the damage to its insured's or claimant's vehicles.

46.     The defendant, with intent to deceive, failed to inform its insureds and claimants that the damage to their vehicles could not be fully determined by the use of photo-estimating.

47.     The defendant has been, and still is, aware that certain motor vehicle manufacturers, such as Mercedes Benz, Audi, BMW and Porsche, require that certain procedures and parts be used to return a damaged vehicle to its pre-accident condition.

48.     Defendant knew or should have known that it is impossible for photo-estimating, to determine what procedures and parts are necessary to comply with manufacturer requirements.

49.     The defendant has been, and still is, aware that it is jeopardizing the safety of their insureds, claimants and others by failing to properly appraise the damage to motor vehicles.

50.     The defendant, its agents, servant and employees employed the deceptive practices as detailed above with the intent that its insureds and claimants will never take their vehicles to a repair shop, such as the plaintiff, and thereby saving it money on supplemental repairs. They want claimants to use photo-estimating.

51.     As the result of the misrepresentations by the defendant, Plaintiff's customers were deceived by those misrepresentations or omissions and that as a result the plaintiff has suffered and will continue to suffer damages.

52.     Defendants acts, policies and procedures were in violation of Section 2610 of the New

York State Insurance Law.

53.    Defendant failed to negotiate in good faith and in fair dealing, in violation of

11 NYCRR 216.7(b) and 11 NY ADC 216.12.

54.    In its scheme, the defendant engaged in materially deceptive practices and

representations designed to, and which did, and which continue to, mislead their insureds and

claimants to believe that their vehicles could be repaired for the amount offered, when they

were aware that this was not true.

55.    The deceptive practices and representations made by the defendant have caused injury

to the public at large. For example, if the sensors which alert a driver to problems with the car

or control airbags are damaged, the driver, passengers or other persons upon the road are at risk

of injury.

56.    Defendant, through its custom and practice, rewarded those employees and/or

independent contractors who purposely undervalued the cost of repairs.

57.    Each separate act and action by the defendants constitutes a separate violation of GBL

Section 349 and 349(h). The photos taken through the photo-estimating app don't show the

potential dangers of possible hidden damages.

58.    That by reason of the foregoing, the public at large and the consumer in general have

sustained damages in accordance with the requirements imposed by 11 NYCRR 216.7(b) and

11 NYCRR 216.12 and all rights afforded by Insurance Law Section 2610.

59.    By reason of the foregoing, the plaintiff has been damaged and injured in its business

and property, in an amount as yet to be determined, but in excess of fifty-million dollars

($50,000,000.00) in business sales, with the exact amount to be determined at trial.

60.    The plaintiff is entitled to an award against Defendant of interest and reasonable

attorneys' fees, pursuant to GBL Section 349(h), if not less than fifty-million dollars

($50,000,000.00)

## SECOND CAUSE OF ACTION

61.     11 NYCRR 216.7 (Unfair Claims Settlement Practices) requires good faith negotiation amongst insurers their insureds and claimants, or their designated representatives.

62.     The defendant, is in violation of the aforementioned sections of the Insurance Law and the Consolidated Laws of New York State.

63.     Defendant, could not, and did not, negotiate in good faith the adjustment of auto body repair claims, as required under and in violation of Section 2610 of the Insurance Law and 11 NYCRR 216.7(b) by using photo-estimating of the damage to motor vehicles.

64.     Defendant made misrepresentations, omissions and uttered material falsehoods which mislead its insureds/claimants and did mislead existing and prospective customers of the plaintiff.

65.     The actions, conduct and/or statements of the defendant were motivated by greed.

66.     Defendant, its agents, servants and employees, including but not limited to its appraisers supervisors and adjusters, individually and collectively, made material falsehoods to their insureds/claimants that their amount of money offered was fair and reasonable to repair and return their vehicles to their pre-accident condition, when Defendant knew such assurance was untrue.

67.     Defendant, its agents, servants and employees, including but not limited to its appraisers, supervisors and adjusters, individually and collectively, did, and does, issue damage repair estimates to plaintiffs at below market value and below the plaintiffs' estimate of repair.

68.     That said actions and conduct were false and/or misleading and made with the intent to steer customers to the defendant's Direct Repair Shops with whom they have a contractual relationship and were made in violation of Section 2610(a) of the New York State Insurance

Law, 11 NYCRR 216.7(b) and 11 NYCRR 216.12.

69.    Defendant's employees, person(s) were and are not properly trained and/or qualified to issue damage repair estimates to appraise the damage to its insured(s)/claimant(s) vehicles serviced at plaintiffs' facility.

70.    The plaintiff is entitled to an award against Defendant of interest and reasonable attorneys' fees.

71.    That by reason of the foregoing, the Plaintiff has been damaged and injured in them business and property in an amount as yet to be determined, but in excess of fifty-million dollars ($50,000,000.00) in business sales, with the exact amount to be determined at trial.

**WHEREFORE**, Plaintiff, M.V.B. COLLISION INC. d/b/a MID ISLAND COLLISION, demands judgment against the defendants in the sum of fifty-million dollars ($50,000,000.00), or some other amount, to be determined by the Court at the time of trial together with the costs and disbursements of this action, as well as punitive damages, together with such other relief as this Court deems just and proper.

Dated: Carle Place, New York

Yours, etc.

STEVEN F. GOLDSTEIN, LLP

By:_____
    STEVEN F. GOLDSTEIN
    *Attorneys for Plaintiff*
    One Old Country Road, Suite 318
    Carle Place, New York 11514
    516-873-0011

TO:    ALLSTATE INSURANCE COMPANY
       1025 RXR Plaza
       Uniondale, New York 11553